IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMERICAN HOME MORTGAGE CORP., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:07-CV-1907-N |
| ZANE MORRIS, *et al.*, | § § § | |
| Defendants. | § | |

### ORDER

This Order addresses American Home Mortgage Corporation and American Home Mortgage Servicing, Inc.'s (collectively, "AHM") motion for summary judgment [27] and Rusco Company's ("Rusco") cross motion for summary judgment [30].[1] The Court holds that AHM's vendor's lien is valid and superior to Rusco's deed of trust. Further, it holds that AHM has not foreclosed its vendor's lien. Finally, the Court holds that Rusco's deed of trust is superior to both of AHM's deeds of trust. Accordingly, the Court grants in part and denies in part both motions for summary judgment.

### I. ORIGINS OF THE PARTIES' LIENS

This case arises out of a priority dispute between two lenders of purchase money for the property at 4706 S. Lindhurst Avenue, Dallas, TX 75220 (the "property"). On August

---

[1]The Court grants Rusco's motion for leave to file response to Plaintiff's motion for summary judgment [32].

16, 2006, John Michael Felts and Zane Morris entered into a real estate contract for the purchase of the property from J.P. Morgan Chase Bank. In order to pay the $2,050,000 purchase price, Felts and Morris obtained financing from two sources: Rusco and AHM.

First, Felts and Morris procured a $400,000 loan from Rusco, evidenced by a promissory note dated September 27, 2006 and secured by a deed of trust recorded on October 11, 2006, before the real estate transaction closed.[2] Rusco wired $205,000 of the loan to Republic Title of Texas, Inc. for use as earnest money at the closing. In addition, it disbursed $20,000 to Felts and Morris to reimburse them for earnest money they had already paid.[3] According to Rusco, Felts and Morris represented that they had sufficient funds to pay the balance of the purchase price. However, Morris sought financing from a second source.[4]

Morris obtained two purchase money loans from AHM, one for $1,547,500 and another for $400,000. Both loans were evidenced by a promissory note and secured by a deed of trust ("AHM first deed of trust" and "AHM second deed of trust," respectively). According to AHM, neither Morris nor Republic Title of Texas disclosed the existence of the Rusco loan. Despite a diligent title search, AHM did not discover the Rusco deed of trust. According to AHM, this is because it was recorded a short time before closing and also before Morris obtained an interest in the property, causing it not to show up in the grantor

---

[2]Quite unusually, the $400,000 promissory note matured on October 12, 2006, the day after the deed of trust was recorded.

[3]Rusco never provided the remainder of the loan amount to Felts and Morris.

[4]It is unclear whether Felts remained involved in the transaction after the Rusco loan was approved.

or the grantee index for the property. As a result, it appears that neither lender knew the other existed.

The real estate transaction closed on October 19, 2006. J.P. Morgan Chase Bank conveyed the property to Morris in a special warranty deed with vendor's lien ("warranty deed"). Through the warranty deed, J.P. Morgan assigned its superior title and vendor's lien to AHM, as further security for the $1,547,500 promissory note. J.P. Morgan did not assign any interest to Rusco and Rusco did not participate in the closing. The warranty deed and both of the AHM deeds of trust were recorded on October 25, 2006.

Morris defaulted on his obligations to both Rusco and AHM. AHM assigned its interest in the $1,547,500 promissory note and the AHM first deed of trust to MARM 2007-1, a master adjustable rate mortgage trust.[5] MARM, through an agent acting under a service agreement, nonjudicially foreclosed on the property pursuant its rights established in the AHM first deed of trust. Subsequently, Rusco sought to nonjudicially foreclose its interest in the property under its deed of trust, leading to this suit. Ultimately, Rusco and AHM entered into an agreement allowing AHM to sell the property to a third party for $2,000,000 and establishing that whatever rights the parties "now have or had to foreclose on their respective lien(s) on the property, and the priority of those liens, shall now apply only to the funds and to the proceeds of the sale, and not to the property." App. in Supp. of Pl.'s Mot. for Summ. J. [27-3] at 77. As a part of this agreement, the parties placed $205,000 of the sale proceeds in escrow, pending resolution of the parties' priority dispute.

---

[5]It did not assign the $400,000 promissory note or the AHM second deed of trust.

ORDER – PAGE 3

The Court must now determine the priority of four liens on the property, all associated with purchase-money loans: (1) the vendor's lien assigned to AHM in the warranty deed; (2) the Rusco deed of trust lien; (3) the AHM first deed of trust lien; and (4) the AHM second deed of trust lien. The dispute between the parties hinges on the vendor's lien assigned to AHM in the warranty deed. AHM contends that its vendor's lien is superior to the Rusco deed of trust and that, by foreclosing on the property pursuant to the AHM first deed of trust, it contemporaenously foreclosed its vendor's lien and extinguished Rusco's deed of trust. In the alternative, AHM seeks judicial foreclosure of its vendor's lien. Rusco, on the other hand, asserts that AHM's purported vendor's lien is invalid and that, even if valid, it was not foreclosed when the AHM first deed of trust was nonjudicially foreclosed.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, courts need not sift through the record in search of triable issues. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In doing so, the nonmovant may not rely on "naked assertions of an actual dispute" but instead "must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case." *In re Lewisville Props., Inc.*, 849 F.2d 946, 950 (5th Cir. 1988) (citing *Anderson*, 477 U.S. at 255–56). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996) (en banc).

### III. PRIORITY OF THE COMPETING LIENS

In order to determine the priority of the parties' competing interests, the Court must address four questions: (1) whether AHM's vendor's lien it is valid; (2) whether AHM's vendor's lien is superior to the Rusco deed of trust;(3) whether the Rusco deed of trust is superior to AHM's first and second deeds of trust; and (4) whether, through nonjudicial foreclosure of the AHM first deed of trust, AHM foreclosed its vendor's lien and extinguished Rusco's deed of trust. The Court considers each question in turn.

#### *A. AHM's Vendor's Lien is Valid*

A vendor's lien "is a lien for purchase money." *Law Offices of C. Kendall Harrell, P.C. v. Commerce Sav. Ass'n*, 824 F. Supp. 1159, 1184 (W.D. Tex. 1993) (citing *Manz v. Johnson*, 531 S.W.2d 934, 936 (Tex. Civ. App. – Fort Worth 1976, no writ)). Where a seller

retains an express vendor's lien to secure unpaid purchase money, "legal title does not pass to the vendee; instead the vendee owns the equitable interest along with a contract for the purchase of land." *Disanti v. Wachovia Bank, NA*, Civil Action No. 2-08-330, 2009 WL 1372970, at *3 (Tex. App. – Ft. Worth May 14, 2009, no pet.) (citing *Flag-Redfern Oil Co. v. Humble Exploration Co.*, 744 S.W.2d 6, 8 (Tex. 1987); *Walton v. First Nat'l Bank of Trenton*, 956 S.W.2d 647, 651 (Tex. App. – Texarkana 1997, pet. denied)). A vendor's lien is extinguished upon payment of the purchase price to the lienholder. *Yates v. Darby*, 131 S.W.2d 95, 99 (Tex. 1939).

J.P. Morgan assigned its vendor's lien to AHM in exchange for the balance of the purchase price. The warranty deed states:

> [T]he payment of [AHM first deed of trust] is secured by the vendor's lien herein retained, and is additionally secured by a deed of trust of even date herewith . . . .
> . . .
> But it is expressly agreed that the vendor's lien, as well as superior title in and to the above-described premises, is retained against the above described property, premises, and improvements until the above described note and all interest thereon are fully paid according to the face, tenor, effect and reading thereof, when this Deed shall become absolute. American Home Mortgage ("Lender") at the insistence and request of [Morris], having advanced and paid in cash to [J.P. Morgan] that portion of the purchase price of the herein described property as is evidenced by [AHM deed of trust 1], the vendor's lien, together with the superior title in said property, is retained herein for the benefit of said Lender and the same are hereby transferred and assigned to said Lender, its successors and assigns.

App. in Supp. of Pl.'s Mot. for Summ. J. [27-3] at 26-27.

Rusco argues that the above-quoted assignment of the vendor's lien is invalid because, by paying the full purchase price to J.P. Morgan at the time of closing, AHM extinguished any vendor's lien that J.P. Morgan had the power to assign. However, a vendor may assign his vendor's lien in exchange for value. *Cebell v. Hauser*, 112 S.W.2d 285, 286-87 (Tex. Civ. App. – San Antonio 1937, writ dism'd). "An existing lienholder can transfer its lien position to another creditor, where the second creditor advances funds to pay the existing indebtedness as a part of a legitimate business transaction." *Baccus v. Westgate Mgmt. Corp.*, 981 S.W.2d 383, 385 (Tex. App. – San Antonio 1998, pet. denied) (citing *Chicago Title Ins. Co. v. Lawrence Invs., Inc.*, 782 S.W.2d 332, 334 (Tex. App. – Fort Worth 1989, writ ref'd); *Diversified Mortgage Investors v. Lloyd D. Blaylock Gen. Contractor, Inc.*, 576 S.W.2d 794, 807 (Tex. 1978); *Faires v. Cockrill*, 31 S.W. 190, 194 (Tex. 1895)). Assignment of a vendor's lien from a seller directly to a third-party lender is a common occurrence in Texas. *See, e.g.*, *Disanti*, 2009 WL 1372970, at *4; *Wilson v. Dvorak*, 228 S.W.3d 228, 231 (Tex. App. – San Antonio 2007, pet. denied); *Sunnyside Feedyard, L.C. v. Metro. Life Ins. Co.*, 106 S.W.3d 169, 171 (Tex. App. – Amarillo 2003, no pet.); *Brown v. Bank of Galveston, Nat'l Ass'n*, 930 S.W.2d 140, 142 (Tex. App. – Houston [14th Dist.] 1996), *aff'd* 963 S.W.2d 511 (Tex. 1998).

The Court holds that AHM's vendor's lien is valid. Next, the Court must consider whether it is superior to the Rusco deed of trust.

### *B. AHM's Vendor's Lien is Superior to Rusco's Deed of Trust*

Rusco executed its deed of trust before Morris acquired any interest in the property. In Texas, "a lien may be subsequently perfected even though at the time the contract . . . the purchaser is not then the 'owner' of the land." *Irving Lumber Co. v. Alltex Mortgage Co.*, 468 S.W.2d 341, 343 (Tex. 1971) (citing *Enlow v. Brown*, 357 S.W.2d 608 (Tex. Civ. App. – Dallas 1962, no writ); *Breckenridge City Club v. Hardin*, 253 S.W. 873 (Tex. Civ. App. – Fort Worth 1923, no writ)). However, such a lien attaches only to the interest the debtor actually acquires. *Id.*; *accord Masterson v. Burnett*, 66 S.W.90, 93 (Tex. Civ. App. – Galveston 1901, writ ref'd) ("the lien of the judgment attached only to such interest as Turner actually acquired [later]"). Therefore, Rusco's lien attached to the interest that Morris acquired at the time of closing.

Morris never obtained superior title to the property. Where a vendor's lien is reserved in the warranty deed, "the superior legal title remains in the vendor [here, the vendor's assignee] and the vendee acquires an equitable right to obtain the legal title by payment of the purchase money." *Forest Lawn*, 254 S.W.2d at 91. Thus, Morris had only equitable title to the property at the time that the Rusco deed of trust attached to his interest. As a result, the vendor's lien that American retained at the time of closing is superior to the Rusco deed of trust. The Court now turns to whether the Rusco deed of trust is superior to the two deeds of trust held by AHM.

### *C. Rusco's Deed of Trust is Superior to AHM's First and Second Deeds of Trust*

"The most basic principle employed in the adjudication of the priority of competing liens is 'the first in time is the first in right." *Kothmann v. Genesis Tax Loan Svcs., Inc.* 288 S.W.3d 503, 510 (Tex. App. – Amarillo 2009, no pet. h.) (citing *World Help v. Leisure Lifestyles, Inc.*, 977 S.W.2d 662, 668 (Tex. App. – Fort Worth 1998, pet. denied); *Windham v. Citizens Nat. Bank*, 105 S.W.2d 348, 351 (Tex. Civ .App. – Austin 1937, writ dism'd)). Here, Rusco recorded its deed of trust on October 11, 2006. AHM recorded its first and second deeds of trust on October 25, 2006. AHM does not dispute that the Rusco deed of trust was first in time or assert that either of its deeds of trust are, for any reason, superior to the Rusco deed of trust.[6] Accordingly, the Court concludes that the Rusco deed of trust is superior to the AHM first and second deeds of trust.

### *D. AHM Did Not Foreclose Its Vendor's Lien When It Nonjudicially Foreclosed Pursuant to the AHM First Deed of Trust*

AHM contends that its nonjudicial foreclosure pursuant to the AHM first deed of trust had the effect of simultaneously foreclosing its vendor's lien in the warranty deed, thereby extinguishing the Rusco deed of trust. The Court disagrees.

AHM relies exclusively on *Donie State Bank v. Parker* to support its position. 554 S.W.2d 858 (Tex. App. – Waco 1977, writ ref'd n.r.e.). In *Parker*, the court assessed the

---

[6]Rusco recorded its deed of trust before Morris obtained any interest in the property. The parties do not discuss or cite any authority relevant to whether the Rusco recording was effective on October 11, 2006, the date it was recorded, or October 19, 2006, the date that Morris closed on the property. Because the parties do not dispute that the Rusco deed of trust is superior to the AHM first and second deeds of trust, the Court need not decide this issue.

priority of a competing vendor's lien, deed of trust lien, and judgment lien. *Id.* at 859. Although the seller of the property executed both the vendor's lien and the deed of trust lien simultaneously, it recorded the vendor's lien about two months before the deed of trust lien. *Id.* Between the recording of the two instruments, a judgment creditor recorded a judgment lien against the property. *Id.* Upon the default of the debtor, the seller nonjudicially foreclosed on the property pursuant to its deed of trust. *Id.* The Court held that the post-foreclosure buyer took the property free and clear of the judgment lien, stating: "This vendor's lien was outstanding and of record when plaintiff took its judgment against the vendee and when it perfected its lien, and was superior to the judgment lien." *Id.* at 860-61.

In holding that the seller's deed of trust foreclosure operated to extinguish a prior-recorded judgment lien, the *Parker* court relied on the well-established principle that instruments executed "contemporaneously and for the same purpose and in the course of a single transaction" should be considered as though they are a single instrument. *Id.* at 860 (citing *Pacific Mut. Life Ins. Co. v. Westglen Park, Inc.*, 325 S.W.2d 113, 116 (Tex. 1959); *Bd. of Ins. Comm'rs v. Great S. Life Ins. Co.*, 239 S.W.2d 803, 809 (Tex. 1951)). This Court does not seek to upset this settled rule. While the warranty deed and the AHM first deed of trust should be construed together, they provide for two different forms of security, entitled to different priority status. Although a vendor's lien may secure the same interest as a related deed of trust, it is, by its nature, "a separate lien apart from a deed of trust lien." *Goidl v. N. Am. Mortgage Investors*, 564 S.W.2d 493, 495 (Tex. Civ. App. – Dallas 1978, no writ) (holding that an agreement to subordinate a deed of trust lien did not infer an agreement to

ORDER – PAGE 10

subordinate a vendor's lien securing the same interest); *see also DeBruhl v. Maas*, 54 Tex. 464 (1881) (holding that a seller does not waive his rights under his vendor's lien by taking a deed of trust as additional security); *DeBusk v. Jacksonville Bldg. & Loan Ass'n*, 147 S.W.2d 537, 541 (Tex. Civ. App. – Eastland 1941, writ dism'd, judgmt. corr.) (same); *Mitchell v. Dallas Loan Co.*, 52 S.W.2d 756 (Tex. Civ. App. – Dallas 1932, no writ) (same). Moreover, the vendor's lien and the AHM first deed of trust at issue in this case, although executed contemporaneously, involved different parties. The warranty deed assigned the vendor's lien from J.P. Morgan to AHM, "at the insistence and request of [Morris]." App. in Supp. of Pl.'s Mot. for Summ. J. [27-3] at 26-27. The deed of trust, on the other hand, was a two-party security instrument between Morris and AHM. Thus, even reading the instruments together, the Court need not treat the liens as if they were identical.

Additionally, this case arises in a very different factual context. *Parker* addressed the rights of a good faith buyer. Had the *Parker* court reached the opposite result, the good faith buyer's interest in the property would have been subject to both the vendor's lien and the judgment lien, even though the interest that the superior vendor's lien secured had already been satisfied. Here, there is no good faith buyer involved. Although AHM sold the property, the parties have agreed that the $2,000,000 proceeds obtained from the sale stand in place of the property. Also, in *Parker*, the vendor's lien apparently exceeded the value of the collateral; foreclosure on the vendor's lien would wipe out the intervening judgment lien. Here, foreclosure of the AHM vendor's lien leaves significant collateral remaining that Rusco could look to for satisfaction. In this rare circumstance and limited to these particular

facts, the Court holds that AHM did not, by electing to nonjudicially foreclose on its deed of trust, simultaneously foreclose on its vendor's lien in the warranty deed and extinguish Rusco's prior recorded deed of trust. Thus, the Court concludes that both AHM's vendor's lien and the Rusco deed of trust encumber the $2,000,000 proceeds that stand in place of the property.

### *E. The AHM Vendor's Lien Is Judicially Foreclosed and Rusco Is Entitled to Excess Proceeds*

The Court orders judicial foreclosure of AHM's vendor's lien. Because the vendor's lien is entitled to first priority, AHM may satisfy its $1,547,500 interest with the $2,000,000 proceeds that stand in place of the property. AHM must apply any excess proceeds after satisfaction of the $1,547,500 interest to Rusco's $225,000 interest.[7] *See Diversified Mortgage*, 576 S.W.2d at 808 (citing *Jeffrey v. Bond*, 509 S.W.2d 563 (Tex. 1974)) (junior lien holder's "security interest transferred to excess proceeds from [foreclosure] sale which stand in the place of the property").

### CONCLUSION

For the reasons provided above, the Court grants in part both motions for summary judgment and orders foreclosure of AHM's vendor's lien. The transactions involved in this case are strange in almost every respect, for reasons the parties do not fully explain. However, the Court may address only those issues that are before it, and it does not purport or attempt to delve below the surface of these transactions.

---

[7]Rusco did not advance the remaining $175,000 of its loan and thus is not entitled to repayment of the entire $400,000 amount indicated in the promissory note.

The parties are directed to confer and advise the Court in writing within thirty (30) days of the date of this order of how best to proceed to final judgment.

Signed March 18, 2010.

_____
David C. Godbey
United States District Judge

ORDER – PAGE 13